**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x KORI DAVIS, : Plaintiff, : CIVIL ACTION NO.: ____________ : - against - : COMPLAINT FOR BREACH OF : COLLECTIVE BARGAINING AGREEMENT PEN AMERICA CENTER, INC. and : AND BREACH OF THE DUTY OF FAIR NATIONAL ORGANIZATION OF LEGAL : REPRESENTATION (29 U.S.C. § 185) SERVICES WORKERS (NOLSW), UAW : LOCAL 2320, AFL-CIO, : JURY TRIAL DEMANDED Defendants. : ---------------------------------------------------x

Plaintiff KORI DAVIS, proceeding pro se, as and for his Complaint against Defendants PEN AMERICA CENTER, INC. ("PEN America" or "Employer") and NATIONAL ORGANIZATION OF LEGAL SERVICES WORKERS, UAW LOCAL 2320, AFL- CIO ("NOLSW" or "Union"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a "hybrid" action brought under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, arising from Defendant PEN America's wrongful discharge of Plaintiff without just cause in breach of the Collective Bargaining Agreement ("CBA"), and Defendant NOLSW's breach of its Duty of Fair Representation ("DFR") owed to Plaintiff under the LMRA and National Labor Relations Act ("NLRA").

2. After deciding to advance Plaintiff's discharge grievance to binding arbitration under Article X of the CBA, NOLSW failed to perform the purely ministerial task of submitting a written demand for arbitration within the 10-day contractual deadline, filing it fourteen (14) days late.

3. NOLSW's failure was not the product of a deliberative, tactical, or reasoned union decision, but the result of unexplained neglect, absence of grievance tracking procedures, internal miscommunication, and inconsistent communication with Plaintiff.

4. On June 3, 2026, Arbitrator David J. Reilly granted PEN America's arbitrability challenge and dismissed Plaintiff's grievance solely on timeliness grounds under Article X, completely extinguishing Plaintiff's contractual right to have his wrongful discharge adjudicated on the merits.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 29 U.S.C. § 185 (Section 301 of the LMRA).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 185(c) because Defendant PEN America maintains its principal place of business in New York County, Defendant NOLSW represents bargaining unit employees within this district, and the unlawful acts and omissions giving rise to this action occurred in this judicial district.

## PARTIES

7. Plaintiff KORI DAVIS ("Plaintiff") is an individual residing in New York, New York, and was at all relevant times an employee of PEN America and a member in good standing of the bargaining unit represented by NOLSW.

8. Defendant PEN AMERICA CENTER, INC. ("PEN America" or "Employer") is a non-profit organization with its principal place of business located at 120 Broadway, 26th Floor-North, New York, NY 10271, operating as an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2) and § 185.

9. Defendant NATIONAL ORGANIZATION OF LEGAL SERVICES WORKERS, UAW LOCAL 2320, AFL-CIO ("NOLSW" or "Union") is a labor organization representing employees in industries affecting commerce within the meaning of 29 U.S.C. § 152(5) and § 185, maintaining its office at 256 West 38th Street, 2nd Floor, New York, NY 10018.

## FACTUAL ALLEGATIONS

A. Collective Bargaining Agreement 10. At all relevant times, PEN America and NOLSW were parties to a Collective Bargaining Agreement ("CBA") effective July 30, 2024 through December 31, 2026.

11. Article X of the CBA establishes a three-step Grievance and Arbitration procedure governing claimed violations of the Agreement, specifically including issues of "just cause in cases of discharge, suspension, or other disciplinary action."

12. Step III(a) of Article X provides: "If the grievance is not satisfactorily concluded in Step II, within ten (10) calendar days of receipt of the written reply in Step II, the Union may present a request in writing to the Employer representative in charge to arbitrate the matter..."

13. Article X further mandates that "[t]ime will be considered to be of the essence for the purpose of this section" and "[i]f the Union fails to adhere to the time limits provided, the grievance will automatically be considered withdrawn."

B. Plaintiff's Employment and Discharge Without Just Cause 14. Plaintiff was employed by PEN America as a Database Coordinator from March 15, 2022 until his termination on March 25, 2025.

15. Throughout March 2025, during downtime after assigned duties were completed and during lunch hours, Plaintiff worked on a personal essay detailing his experience as an employee navigating two internal investigations at PEN America after sharing media content that anonymous colleagues deemed "offensive."

16. Throughout his three-year tenure, Plaintiff observed multiple colleagues working on personal writing projects during work hours when duties were completed, a practice accepted without disciplinary action or warning by PEN America management.

17. On March 22, 2025, Mondoweiss published Plaintiff's article, titled *"Why was I investigated for sharing an article critical of Zionism by the 'free speech' organization PEN America?"* The article contained a link to Writers Against the War on Gaza ("WAWOG").

18. On March 25, 2025, PEN America interim CEO Clarisse Rosaz Shariyf attended a standing meeting with Plaintiff and his supervisor, William Johnson, and notified Plaintiff that he was terminated "because of the article" and because management "couldn't have this right now." Plaintiff was not afforded union representation during this meeting due to lack of advance notice.

19. On April 21, 2025, PEN America issued its Step I grievance response asserting serious misconduct and misappropriation of financial resources under Article IX, based in part on alleged financial harm from Plaintiff's article and its hyperlink to an existing boycott. In its April 10, 2025 Step I grievance, PEN America United (PAU) disputed that characterization, arguing that Article IX, § 9 concerns theft, fraud, or deliberate misuse of employer financial resources, not public criticism that might negatively affect the employer financially. PAU requested documentation of actual or projected losses attributable to the article and identification of any financial resources allegedly misappropriated.

20. On May 27, 2025, PEN America issued its Step II grievance denial, maintaining its allegation of intentional misappropriation involving employer financial resources under Article IX, § 9, and alleging use of employer equipment, email, and work time in violation of Article XV, § 2 and Article XX (No Strike). In its May 1, 2025 Step II grievance, PAU maintained that PEN had not identified the specific financial resources allegedly misappropriated or an exact dollar amount, and disputed PEN's additional no-strike

rationale, observing that the boycott predated Plaintiff's article and questioning how the article interfered with PEN's operations. PAU also sought emails allegedly demonstrating deliberate misuse of PEN property. Articles XV, § 2 and XX are not expressly enumerated among Article IX, § 9's seriousmisconduct categories; Plaintiff disputes that PEN's allegations established just cause for immediate discharge.

21. Plaintiff disputes that his conduct amounted to intentional misappropriation of employer financial resources or otherwise established just cause for immediate discharge under Article IX. Plaintiff acknowledges editing the article on a PEN-issued laptop during downtime and lunch periods and using his PEN email account to pitch the article. Plaintiff used his work email because he wanted to monitor incoming work communications. Plaintiff had observed colleagues engage in personal writing after completing their assigned duties, knew of no warning that such writing during downtime could lead to immediate discharge, and recalls a former supervisor suggesting nearby places suitable for writing. Plaintiff contends that the article was journalistic commentary about his experience of PEN's internal investigations, not advocacy for a political candidate or legislation, and that linking to an existing boycott was not a call by Plaintiff to join or organize it. Plaintiff disputes PEN's characterization of the article as prohibited political activity under Article XV, §2, which also refers to issue-based political activism.

22. Following PEN America's opposition to Plaintiff's unemployment benefits, Administrative Law Judge Seeta Persaud issued a decision on October 10, 2025 (ALJ Case No. 025-13994), holding that: a. PEN America's disloyalty policies failed to apprise Plaintiff that publishing an article critical of the organization constituted grounds for discharge; b. Plaintiff did not organize or call for a boycott of the employer; c. Plaintiff had no prior relevant warnings; and d. Plaintiff did not commit misconduct, losing his employment under non-disqualifying circumstances.

C. The Union's Ministerial Failure and Lack of Procedures 23. NOLSW filed a timely grievance on April 10, 2025 contesting Plaintiff's discharge.

24. On May 27, 2025, PEN America served its written Step II denial on NOLSW, establishing June 6, 2025 as the mandatory contractual deadline under Article X for NOLSW to file a written request for arbitration.

25. NOLSW made a firm decision to advance Plaintiff's discharge grievance to arbitration.

26. On May 29 and June 2, 2025, Plaintiff communicated with NOLSW representative Lily Defriend to check in on the status and progression of Plaintiff's grievance toward arbitration. Plaintiff understood these communications to be requests for updates concerning the Union's handling of the grievance and the approaching arbitration deadline. On May 29, Plaintiff requested the collective bargaining agreement and employee handbook; on June 2, Plaintiff confirmed locating the agreement and discussed related concerns. Defriend did not respond to these requests for information or provide the status clarification Plaintiff sought at that time.

27. NOLSW failed to submit its written demand for arbitration until June 20, 2025-fourteen (14) days after the expiration of the CBA deadline.

28. On June 23, 2025, PEN America informed NOLSW that the deadline had passed and deemed the grievance automatically withdrawn under Article X.

29. In April 2026, NOLSW's legal briefing revealed that Representative Defriend experienced a family medical emergency requiring overseas travel immediately following May 27, 2025, and that Defriend "mistakenly believed" the PAU Executive Board would file the demand.

30. The Union's arbitration brief did not identify a confirmed substitute responsible for filing or describe a verified deadline-tracking procedure. Plaintiff does not presently know what backup or calendar

systems the Union maintained and seeks discovery on the allocation and verification of filing responsibility.

D. Failure to Communicate and Deliberate Inaction 31. Plaintiff alleges recurring gaps in communications about the arbitration filing and next steps after PEN objected to the late demand. Plaintiff sought explanations and status updates in May, June and July 2025 and continued seeking clarity in August and September.

32. On August 14, 2025, Defriend stated by text that an "arbitrator will not review it unless management is open to it." Plaintiff disagreed with that assessment and urged submission for an arbitrator's decision.

33. On August 15 and September 25, 2025, Plaintiff submitted written inquiries to NOLSW President Pam Smith and Financial Secretary Rachel Thomas regarding the status of his filing; Plaintiff reports that he received no response to those inquiries.

34. On September 29, 2025, Defriend texted Plaintiff claiming that an unrelated inquiry email sent by Plaintiff to the University of Minnesota "undermined the credibility of the arbitration." Defriend then stated, "I think the decision is final," and directed Plaintiff to appeal the decision to NOLSW President Pam Smith. Plaintiff understood this communication as indicating that the Union had reached a serious, potentially final decision not to advance his arbitration, notwithstanding his repeated efforts to secure representation and a hearing on the merits. The message left Plaintiff uncertain whether the Union would continue pursuing his grievance and whether any further action would be taken to protect his contractual rights. The Union later resumed pursuing arbitration.

E. Dismissal of Arbitration on Procedural Grounds 35. The arbitration proceeded before Arbitrator David J. Reilly (AAA Case No. 01-25-0009-4829) bifurcated solely on procedural arbitrability.

36. On June 3, 2026, Arbitrator Reilly issued an Award and Opinion dismissing the grievance as non-arbitrable due to NOLSW's untimely filing under Article X.

37. Arbitrator Reilly held that the CBA's "time is of the essence" and "automatically withdrawn" clauses required strict enforcement, rejecting NOLSW's equitable defense and finding that the Union's prior verbal or written expressions of intent could not substitute for a timely written demand.

38. On June 4, 2026, NOLSW legal counsel Charles T. Joyce notified Plaintiff that NOLSW's representation had terminated.

**TIMELINESS AND CONTINUING ARBITRATION PROCEEDINGS**

39. Plaintiff learned in June 2025 that the Union had submitted the arbitration request after the contractual deadline. At that time, Plaintiff did not know the full circumstances responsible for the delay, including how the Union had assigned responsibility for submitting the request.

40. Following the missed deadline, the Union continued representing Plaintiff, pursuing arbitration, and contesting PEN America's procedural-arbitrability objection. Plaintiff understood that the Union was continuing efforts to preserve a hearing on the merits of his discharge grievance.

41. The Union's April 24, 2026 arbitration brief described a misunderstanding about whether the PAU Executive Board would submit the arbitration request while the Union representative was away.

42. On June 3, 2026, Arbitrator David J. Reilly determined that the grievance was procedurally nonarbitrable, without reaching the merits of Plaintiff's discharge. On June 4, 2026, Union counsel informed Plaintiff that representation concerning the grievance had ended.

43. Plaintiff contends that his hybrid § 301/duty-of-fair-representation claim accrued no earlier than June 3, 2026, when the final adverse arbitration award established that his grievance would not be heard on its merits, or alternatively June 4, 2026, when Union counsel notified him that the Union's representation had ended. Although Plaintiff knew the details of the missed deadline in April 2026, the Union continued to represent him in proceedings aimed at overcoming that objection. Plaintiff understood that those proceedings could still preserve a merits hearing.

44. In support of this accrual position, Plaintiff relies on Kalyanaram v. American Association of University Professors, 742 F.3d 42 (2d Cir. 2014), and Ghartey v. St. John's Queens Hospital, 869 F.2d 160 (2d Cir. 1989), concerning accrual of duty-of-fair-representation claims involving union representation through arbitration and an adverse arbitral award. Plaintiff acknowledges that Defendants may argue for an earlier accrual date based on his knowledge of the missed deadline in April 2026; Plaintiff alleges that the Union's continued representation and the unresolved arbitrability proceedings distinguish his circumstances.

**FIRST CAUSE OF ACTION (Breach of Duty of Fair Representation Against Defendant NOLSW)**

45. Plaintiff realleges and incorporates paragraphs 1 through 44 as if fully set forth herein.

46. Under the LMRA and NLRA, Defendant NOLSW owed Plaintiff a Duty of Fair Representation to process his discharge grievance in a non-arbitrary, non-discriminatory, and good-faith manner.

47. NOLSW breached its Duty of Fair Representation through arbitrary and perfunctory conduct, reckless disregard of Plaintiff's rights, and unexcused inaction, specifically by:

a. Failing to perform the purely ministerial act of submitting a written demand for arbitration by June 6, 2025 after deciding to pursue arbitration (*Caputo v. NALC*, 730 F. Supp. 1221; *Dutrisac v. Caterpillar*, 749 F.2d 1270);

b. Failing to maintain basic grievance tracking systems or backup calendar procedures to preserve mandatory contractual filing deadlines during staff absences (NLRB GC Memo 19-01);

c. Failing to respond to Plaintiff's repeated requests for information and status updates between May 2025 and October 2025; and

d. Misleading Plaintiff regarding management's consent requirements for arbitration.

48. NOLSW's ministerial failure completely extinguished Plaintiff's right to challenge his discharge in binding arbitration.

49. As a direct and proximate result of NOLSW's breach, Plaintiff was deprived of his contractual remedies and suffered substantial loss of earnings, health coverage, and professional status.

**SECOND CAUSE OF ACTION (Breach of Collective Bargaining Agreement Against Defendant PEN America)**

50. Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

51. Defendant PEN America breached Article IX of the CBA by terminating Plaintiff on March 25, 2025 without just cause.

52. PEN America's cited grounds of misconduct and intentional misappropriation are disputed. Plaintiff contends that his journalistic article about PEN's investigations did not advocate for a political candidate or legislation, did not organize or call for a boycott, and did not amount to intentional misappropriation of PEN's financial resources. Plaintiff acknowledges use of PEN's laptop and email as described above, but disputes that this conduct warranted immediate termination under Article IX. Article XV, §2 addresses both partisan and issue-based political activity, and the parties dispute whether

it applied to Plaintiff's articlerelated conduct. The unemployment ALJ found no disqualifying misconduct for unemployment-insurance purposes but did not decide contractual just cause.

53. As a direct and proximate result of PEN America's breach of contract, Plaintiff has suffered loss of employment, back pay, front pay, lost benefits, and statutory interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A. Declaring that Defendant NOLSW breached its Duty of Fair Representation owed to Plaintiff under 29 U.S.C. § 185; B. Declaring that Defendant PEN America breached the Collective Bargaining Agreement by discharging Plaintiff without just cause; C. Awarding Plaintiff compensatory damages, back pay, front pay, lost medical and pension benefits, and pre- judgment interest against the responsible Defendant or Defendants, subject to the law governing causation, allocation of damages, and available remedies, in an amount to be determined; D. Awarding Plaintiff the costs and disbursements of this action; and E. Granting such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: [New York, NY] [11/10/2026]

Respectfully submitted,

______________________________ KORI DAVIS, *Plaintiff Pro Se* [511 W 143rd Street, APT 51] [New York, NY] [10031] [469-867-3651] [KORI.B.DAVIS@GMAIL.COM]